UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARLA BAKER,                        )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )    Civil Action No. 09-1480 (RBW)
                                    )
KATHRYN GURFEIN et al.,             )
                                    )
         Defendants.                )
_____)

**MEMORANDUM OPINION**

Marla Baker, the plaintiff in this civil case, seeks, inter alia, compensatory and punitive damages from defendant Tobin, O'Connor and Ewing (the "Law Firm"), alleging that through one of its principals, Stephen O'Connor, it aided and abetted defendant Kathryn Gurfein in the wrongful conversion of certain family jewelry, and that it fraudulently misrepresented the location of this jewelry.[1] Complaint (the "Compl.") ¶¶ 19-33, 39-46. Currently before the Court is the Law Firm's motion to dismiss both claims brought against it under Federal Rule of Civil Procedure 12(b)(6). Defendant Tobin, O'Connor & Ewing's Motion to Dismiss at 1. After carefully considering the Law Firm's motion and accompanying memorandum of law (the "Def.'s Mem."), the plaintiff's memorandum in opposition to the Law Firm's motion to dismiss (the "Pl.'s Mem."), and all documents and exhibits attached thereto, the Court concludes for the following reasons that the motion to dismiss must be granted in part and denied in part.

---

[1] Baker also names Gurfein and Wachovia Bank, N.A. ("Wachovia") as defendants in this case. Specifically, she is seeking awards of compensatory and punitive damages against defendant Gurfein for wrongful conversion of the family jewelry, Compl. ¶¶ 19-33, breach of contract, id. ¶¶ 34-38, and fraud, id. ¶¶ 39-46. Additionally, she seeks partition and sale of the family jewelry. Id. ¶¶ 61-69. As for Wachovia, Baker is seeking compensatory damages for the alleged negligent release of the family jewelry to defendant Gurfein. Id. ¶¶ 47-60. Baker also sought damages from O'Connor personally, but the Court has dismissed him from the case with her consent. Minute Order, Baker v. Gurfein, Civil Action No. 09-1480 (RBW), at 1 (D.D.C. Oct. 5, 2009).

## I. Background

The following facts are alleged in the complaint and assumed to be true for the purposes of resolving the Law Firm's motion to dismiss. See infra p. 4-5. Baker and defendant Gurfein are sisters. Compl. ¶ 10. Following their mother's death in 1995, their father "stated that he was gifting" to the sisters jointly "jewelry (and other personal property)" that belonged to their mother. Id. ¶¶ 10-11. Consistent with their mother's specifications, their father "not[ed] that the jewelry was to be divided equally in value between them." Id. ¶ 11. "Neither sister," however, "was prepared to divide the . . . jewelry at that time," so their father "agreed" to maintain possession of the jewelry "until such time as they could reach a mutual agreement with respect to the disposition of such property." Id. ¶ 12. On November 3, 1997, their father died before the sisters could agree on an appropriate disposition of the jewelry. Id. ¶ 14. The sisters then placed the jewelry in a "dual safe deposit box" at First Union National Bank, Wachovia's predecessor, id. ¶ 15, which the sisters agreed in writing could only be accessed with the signature of both sisters, id. ¶¶ 16-17.

After years of litigation regarding the distribution of their father's estate, the sisters turned their attention to "the unresolved issue related to the disposition of the jewelry." Id. ¶¶ 18-19. In May 2008, the sisters entered into an "[e]scrow [a]greement" which contemplated that they would meet, inventory the jewelry, and then deliver them to an escrow agent, who would retain the jewelry until provided "written instructions by both [sisters]." Id. ¶¶ 19-21. The sisters agreed to meet on May 28, 2008, or, alternatively, June 18, 2008, "to make an inventory . . . of the contents [of the safe deposit box] and to deliver such contents to the escrow agent pending [their] distribution." Id. ¶ 22 (internal quotation marks omitted). Gurfein subsequently "refused to meet with [Baker] on" those dates and "the contents [of the safe deposit box]

consisting of the subject jewelry[] were never transferred to the escrow agent." Id. ¶ 23 (internal quotation marks omitted).

O'Connor engaged in negotiations on behalf of Gurfein to determine how the "jewelry and family heirlooms could be distributed or liquidated." Id. ¶ 40. On August 22, 2008, id. ¶ 24, while the parties were "in the midst of these . . . negotiations," id. ¶ 41, Gurfein and O'Connor went to the Wachovia location where the jewelry was located, id. ¶ 24, and made "false and deceptive statements regarding [the plaintiff's] lack of interest in the jewelry and her rights of access or possession," convincing Wachovia to permit Gurfein unilateral access the jewelry, id. ¶ 25. Gurfein then took possession of the jewelry and left the bank, id. ¶ 25, thereby depriving the plaintiff of her rights in the property, id. ¶ 26, and violating the agreement by the sisters that neither could unilaterally access the jewelry, id. ¶¶ 34-38.

Following Gurfein's acquisition of the jewelry, O'Connor advised Baker's attorney on August 25, 2008, that "[t]he items ha[d] been placed in a safe deposit box at Wachovia for safe keeping." Id. ¶ 42. However, O'Connor, as well as defendants Gurfein and the Law Firm, knew that these representations were false and that "the jewelry had not been placed in another safe deposit box at Wachovia but instead" remained in the possession of Gurfein "for her own use and benefit." Id. ¶ 43 (emphasis omitted). Gurfein has retained possession of the jewelry and "refuses to restore the property to joint control, notwithstanding [a] demand [for the jewelry] having been made upon her" by Baker. Id. ¶ 27.

Baker then filed the complaint in this case on August 6, 2009, alleging that Gurfein wrongfully converted possession of the jewelry, id. ¶ 26 and that she committed fraud in doing so, id. ¶ 43. Furthermore, Baker asserts that O'Connor "aided and abetted" Gurfein's wrongful conversion of the jewelry, id. ¶ 30, that O'Connor knowingly and fraudulently represented that

3

the jewelry remained in a safe deposit box in order "to induce [the p]laintiff's reliance . . . and to lull [the plaintiff] into a false sense of security with respect to safe keeping, security and location of the subject jewelry," id. ¶ 44, and that the Law Firm "ratified and approved" O'Connor's actions, id. ¶ 30-31. Because of O'Connor's purported actions, Baker alleges that she "relied upon the . . . fraudulent misrepresentation to her detriment and failed to take immediate action to protect her interests with respect to the jewelry, the whereabouts of which are presently unknown." Id. ¶ 46.

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000) (Urbina, J.). For a complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," a plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 77 (1957)). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). A complaint

4

alleging facts which are "'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion under this framework, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). Although the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." Iqbal, ___ U.S. at ___, 129 S. Ct. at 1950. If "the [C]ourt finds that the plaintiffs have failed to allege all the material elements of their cause of action," then the Court may dismiss the complaint without prejudice, Taylor v. FDIC, 132 F.3d 753, 761 (D.C. Cir. 1997), or with prejudice, provided that the Court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

Additionally, because here the plaintiff is seeking recovery for an allegedly fraudulent misrepresentation, she must meet the heightened pleading standards required under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) is not an antithesis of Rule 8(a)'s "short

and plain statement" requirement, but rather a supplement to it. U.S. ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004). To survive a motion to dismiss a fraud claim, therefore, the plaintiff must state the "time, place[,] and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." Acosta Orellana v. CorpLife Intern, ___ F. Supp. 2d ___, ___, 2010 WL 1931689, at *9 (D.D.C. May 13, 2010) (Walton, J.) (quotation marks deleted); see also Stevens v. InPhonic, Inc., 662 F. Supp. 2d 105, 114 (D.D.C. 2009) (Walton, J.) ("The complaint must . . . provide a defendant with notice of the who, what, when, where, and how with respect to the circumstances of the fraud in order to meet this enhanced pleading standard." (internal quotation marks omitted)).

### III. Legal Analysis

The Law Firm presents several arguments in support of its motion to dismiss. First, the Law Firm asserts that Baker has failed to plead a valid conversion claim because she "does not allege that [the Law Firm] ever possessed the jewels that she seeks to recover," and that in any event, the Law Firm "has no liability to third parties for advice it provides [to] its own client." Defs.' Mem. at 1. As for the fraudulent misrepresentation claim, the Law Firm asserts that this claim fails because Baker has not demonstrated that the purported misrepresentation was material, or that there was "any reasonable reliance or damages resulting therefrom." Id. at 2. In considering the arguments raised by the defendants, the Court is mindful of the fact that this matter falls under its "diversity jurisdiction," 28 U.S.C. § 1332 (2006), and thus under the doctrine established in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938), the Court must "look to [District of Columbia] law for rules of decision with respect to substantive matters," Davis v. Grant Park Nursing Home, L.P., 639 F. Supp. 2d 60, 64 (D.D.C. 2009) (Friedman, J.);

see also Williams v. U.S. Elevator Corp., 920 F.2d 1019, 1022 (D.C. Cir. 1990) ("Although the Rules of Decision Act . . . do not strictly apply with respect to [District of Columbia] law, we apply [the District's] substantive law analogously for reasons of uniformity and respect for the [District of Colmbia] Court of Appeals" (internal quotation marks and citation omitted)). Furthermore, where "there is no District law on point, [the Court] should look to Maryland law first . . . . because . . . the District of Columbia derives its common law from that state and because District of Columbia courts have in the past looked to Maryland law for guidance." Conseco Industries, Ltd. v. Conforti and Eisele, Inc., D.C., 627 F.2d 312, 315 (D.C. Cir. 1980). With these principles as its guidepost, the Court will address each of the Law Firm's arguments below.[2]

### A. The Plaintiff's Conversion Claim

In its efforts to undermine Baker's conversion claim, the Law Firm misconstrues the theory of liability that she relies upon in her complaint. To be sure, Baker failed to allege that the Law Firm exercised dominion and control over the jewelry, and that such an omission surely would be fatal under a theory that the Law Firm is <u>directly</u> liable for the conversion of the property at issue. But Baker is not seeking to hold the Law Firm liable directly; rather, she is seeking to hold the Law Firm <u>vicariously</u> liable for the actions of Gurfein under an aiding and abetting theory.[3] Pl.'s Mem. at 2. And under this theory, the plaintiff need not establish that all

---

[2] For the purposes of resolving this motion, the Court will assume that the Law Firm can be held vicariously liable for the actions of one of its partners, as the Law Firm does not take exception to being held liable in this manner. To that extent, the Court, for ease of reference and unless otherwise noted, will simply refer to O'Connor and the Law Firm collectively as "the Law Firm" throughout the remainder of this memorandum opinion.

[3] This Court recently observed that "the status of aiding and abetting as an actionable theory in the District of Columbia remains uncertain and, as such, it is unclear whether this Court, which has jurisdiction based on diversity, should embrace the doctrine." Acosta Orellana, ___ F. Supp. 2d at ___, 2010 WL 1931689, at *19 (citing Flax v. Schertler, 935 A.2d 1091, 1107-08 (D.C. 2007)). Upon further reflection, the Court concludes that while it is correct that the status of the aiding and abetting theory of liability remains unsettled based on District of Columbia Court of
(continued . . .)

7

of the elements of conversion have been met with regards to the Law Firm; rather, the plaintiff must show, <u>inter alia</u>, that a party (in this case, Gurfein) committed the underlying tort, and that the defendant <u>aided</u> that party in committing the tort. <u>Acosta Orellana</u>, ___ F. Supp. 2d at ___, 2010 WL 1931689, at *19 (noting that a party pursuing recovery under an aiding and abetting theory must establish, <u>inter alia</u>, that there has been "a wrongful act causing an injury by a party aided by the defendant"). Thus, the Law Firm's efforts to have the conversion claim dismissed on the grounds asserted must be rejected.[4]

---

(. . . continued)
Appeals' precedents as of the date of the issuance of this memorandum opinion, the Court is required by the District of Columbia Circuit's decision in <u>Halberstam v. Welch</u>, 705 F.2d 472 (D.C. Cir. 1983), to recognize this legal concept. In <u>Halberstam</u>, the District of Columbia Circuit concluded that "[i]t seems likely that the District's courts would . . . find vicarious liability for support of wrongful action through knowing substantial aid or encouragement." <u>Id.</u> at 479. The Circuit went on to affirm the "district court's factual findings and inferences" because they "fit into existing concepts of civil liability for . . . aiding[ and ]abetting." <u>Id.</u> at 489. While the District of Columbia Court of Appeals subsequently noted in <u>Flax</u> that recognition of the aiding and abetting theory is still an open question, and that it was not bound by the Circuit's decision in <u>Halberstam</u>, the fact remains that the Circuit's analysis in <u>Halberstam</u> was necessary to the decision reached in that case, and thus this Court is bound by that analysis until it is overturned by an <u>en banc</u> panel of the Circuit, <u>see, e.g.</u>, <u>Gersman v. Group Health Ass'n, Inc.</u>, 975 F.2d 886, 897 (observing that a decision by a District of Columbia Circuit panel is binding on subsequent panels and this Court "unless and until overturned by the [circuit] court <u>en banc</u>"), or the District of Columbia Court of Appeals issues a contradictory ruling, <u>see</u> <u>Jones-Hamilton Co. v. Beazer Materials & Services, Inc.</u>, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (concluding that a prior panel's "interpretation of California law is binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect" (internal quotation marks omitted)); <u>Roboserve, Ltd. v. Tom's Foods, Inc.</u>, 940 F.2d 1441, 1451 (11th Cir. 1991) (concluding that prior panel decision regarding interpretation of Georgia law is binding until "an intervening Georgia case has specifically contradicted" it); <u>Derflinger v. Ford Motor Co.</u>, 866 F.2d 107, 110 (4th Cir. 1989) (quoting <u>Broussard v. Southern Pac. Transp. Co.</u>, 665 F.2d 1387, 1389 (5th Cir. 1982)) ("[A] prior panel decision should be followed by other panels without regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes this Court's [prior] decision clearly wrong." (internal quotation marks omitted)); <u>Stepanuk v. State Farm Mutual Automobile Ins. Co.</u>, Civil Action No. 92-6095, 1995 WL 553010, *2 (E.D. Pa. Sept. 19, 1995) (concluding that "if another panel of the . . . Third Circuit is bound by a previous panel's construction of state law[,] then district courts within the Third Circuit are also bound by that construction"). Without any opinion issued by an <u>en banc</u> panel of the District of Columbia Circuit or the District of Columbia Court of Appeals post-<u>Halberstam</u> that would give this Court pause about the precedential force of that decision, the Court must proceed in this matter as if the District of Columbia courts would allow recovery for conversion under an aiding and abetting theory of liability.

[4] The Law Firm does not challenge the sufficiency of the plaintiff's allegations of conversion under an aiding and abetting theory of liability. Thus, the Court need not address whether the plaintiff has pled facts sufficient to give rise to a plausible claim of liability for aiding and abetting Gurfein in converting the family jewelry at issue in this case.

Similarly, the Law Firm's argument that "a lawyer is not liable to a third party for advising his own client to breach a contract or to advance the client's own interests," Def.'s Mem. at 4, is nothing more than a <u>non</u> <u>sequitur</u>. The case before the Court does not involve a situation involving an attorney <u>advising</u> a client to breach a contract; rather, the plaintiff is alleging that the Law Firm, through one of its principals, O'Connor, was an <u>active participant</u> in the commission of an intentional tort by "communicat[ing] to Wachovia a number of false and deceptive statements regarding B[aker]'s lack of interest in the jewelry" with the objective of permitting Gurfein "to gain unilateral access to the container or safe deposit box," Compl. ¶ 25, and therefore accord Gurfein the ability to "wrongful[ly] exercise . . . dominion and control over the . . . jewelry," <u>id.</u> ¶ 26. Because O'Connor, as alleged in the complaint, took action with the intent of depriving Baker of her proprietary interest in the jewelry, the Law Firm can be held liable regardless of whether it was acting on behalf of its client. <u>See</u> <u>Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper</u>, 935 A.2d 362, 381 (D.C. 2007) (quoting <u>Fraidin v. Weitzman</u>, 611 A.2d 1046 (Md. Ct. Spec. App. 1992)) (observing that "an attorney may be liable if he 'possess[es] a desire to harm which is independent of the desire to protect his client'"); <u>Fraidin</u>, 611 A.2d at 1079-80 (noting that an attorney "<u>may not commit . . . a malicious or tortious act</u>" and can be held liable by a third party where "the attorney did not act within the role of an advisor and merely advise, but instead knew of the client's wrongful conduct and was actively involved in the wrongful conduct" (emphasis added)). The Law Firm's efforts to have this Court dismiss Baker's conversion claims must, therefore, be rejected.

B. The Plaintiff's Fraudulent Misrepresentation Claim

The sufficiency of the allegations regarding the plaintiff's fraud claim, however, is a different matter. The misrepresentation at issue here allegedly "took place [o]n August 25, 2008,

9

several days after the [alleged] conversion" of the jewelry, whereby the Law Firm purportedly advised the plaintiff's counsel that "[t]he items have been placed in a safe deposit box at Wachovia for safe keeping." Compl. ¶ 42. For this statement to rise to the level of an actionable fraudulent misrepresentation, the plaintiff must plead with particularity facts that would satisfy the following five elements: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." In re Estate of McKenney, 953 A.2d 336, 341 (D.C. 2008), cited in Acosta Orellana, ___ F. Supp. 2d at ___, 2010 WL 1931689, at *9. Even assuming that the representation was false, that O'Connor and the Law Firm had knowledge of its falsity, and that the statement was made with the intent to deceive, the Court concludes that Baker has failed to allege facts sufficeint to establish that the misrepresentation was material, or that the plaintiff's reliance on the statement was reasonable.

With regards to the materiality of the statement, the fatal flaw in Baker's allegations is that she has failed to establish "what was retained or given up as a consequence of the fraud." Martin-Baker, 389 F.3d at 1256. At most, the purported misrepresentation by the Law Firm "lull[ed Baker] into a false sense of security," Compl. ¶ 44, and as a consequence, she "failed to take immediate action to protect her interests with respect to the jewelry," id. ¶ 46. But as Baker admits, the purported misrepresentation was made "several days after the conversion of the" jewelry, id. ¶ 42, and thus, Baker did not lose her proprietary interest in the jewelry "as a consequence" of the misrepresentation. Indeed, rather than misrepresenting to Baker the location of the jewelry, had the Law Firm simply come clean and admitted that Gurfein took sole possession of the jewelry, Baker still would not have had access to the jewelry. Thus, even

assuming that O'Connor's representation was false, that misrepresentation has no bearing on the loss purportedly suffered by Baker.

Moreover, even assuming that the misrepresentation had some material effect on Baker's ability to protect her interest in the jewelry, her reliance on the Law Firm's misrepresentation was unreasonable as a matter of law. As the District of Columbia Court of Appeals has recognized, "[i]t may be unreasonable to rely on a misrepresentation . . . if there was an adequate opportunity to conduct an independent investigation and the party making the representation did not have exclusive access to such information." In re Estate of McKenney, 953 A.2d at 343 (internal quotation marks omitted). Reliance, however, is justified if "a defendant . . . prevents a plaintiff from making a reasonable inquiry." Id. (quoting FS Photo, Inc. v. PictureVision, Inc., 61 F. Supp. 2d 473, 483 (E.D. Va. 1999)). In this vein, Howard v. Riggs Nat'l Bank, 432 A.2d 701 (D.C. 1981), provides a useful illustration of how these principles are applied. There, the plaintiff sought a loan from Riggs Bank "to purchase and renovate a house located in northwest Washington." Id. at 703. Before a loan could be made, the bank required the plaintiff to submit "plans and specifications for the proposed renovation." Id. To quell the plaintiff's concerns about the costs associated with procuring such plans, the loan officer referred her to a contractor who could do the work at a reasonable price, and represented to the plaintiff that the work performed by the contractor was "very good [and] very beautiful." Id. at 703-04. The plaintiff then entered into a construction contract with the contractor, but after performing some demolition work, the contractor failed to complete the renovation called for under the contract. Id. at 705. The lower court granted summary judgment in favor of the bank, and the District of Columbia Court of Appeals affirmed the decision because, among other things, the plaintiff "had an adequate opportunity to conduct an independent investigation into [the contractor's]

11

reputation and to obtain references from past customers of [the contractor]; the bank certainly did not have exclusive access to such information." Id. at 707.

Baker has an even less compelling case for reasonable reliance than the plaintiff did in Howard. Unlike the plaintiff there, Baker received information regarding the status of her property from an attorney who, on behalf of Gurfein, had earlier pursued "acrimonious and protracted litigation . . . regarding [the] disposition of the" same jewelry that is at issue in this case. Compl. ¶ 18. Furthermore, Baker certainly had reason to believe that an independent investigation was necessary when she had been informed that Guerfein "was able to access the items held by Wachovia Bank," id. ¶ 42, despite the fact that Wachovia had been instructed by the sisters that signatures from both would be required before access to the safe deposit box could be obtained, id. ¶ 17. In other words, Baker was on actual notice that her sister, who she was in an active dispute with regarding the disposition of the jewelry, and who had previously agreed that unilateral access to the jewelry was prohibited, had just sought (and actually gained) access to the jewelry without Baker's required consent. Baker should have known that something was amiss, and thus her reliance on the statement made by an attorney representing her sister cannot excuse her failure "to take immediate action to protect her interests in the jewelry." Id. ¶ 46. Baker's fraudulent misrepresentation claim must, therefore, be dismissed.[5]

## IV. Conclusion

In sum, the Law Firm is only entitled to partial relief on its motion to dismiss. As noted above, the Law Firm's arguments in support of the Court dismissing the conversion count fail, as

---

[5] Because the Court cannot conclusively conclude that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]" highlighted in this memorandum opinion, Firestone, 76 F.3d at 1209 (internal quotation marks and citations omitted), the Court will dismiss the fraudulent misrepresentation claim without prejudice.

Baker is seeking relief based upon a theory of vicarious, not direct, liability. The Court does agree with the Law Firm, however, that Baker has failed to allege facts sufficient to set forth an actionable fraudulent misrepresentation claim. Therefore, for the reasons set forth in this memorandum opinion, the Court denies the Law Firm's motion to dismiss Baker's conversion claim and grants the motion to dismiss her fraudulent misrepresentation claim.

**SO ORDERED** this 13th day of October, 2010.[6]

REGGIE B. WALTON<br>United States District Judge

---

[6] A final order will be issued contemporaneously with this memorandum opinion granting in part and denying in part the Law Firm's motion to dismiss.